UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

GREGORY OWENS,                )
                             )
            Petitioner,       )
                             )
      v.                      )         2:15-cr-00055-NT
                             )         2:20-cv-00037-NT
                             )
UNITED STATES OF AMERICA,     )
                             )
            Respondent        )

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Petitioner moves pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence.  (Motion, ECF No. 191.)  Following a jury trial, Petitioner was convicted of interstate domestic violence and discharge of a firearm during and in relation to a crime of violence; the Court sentenced Petitioner to life in prison.  (Judgment, ECF No. 131.)  The First Circuit affirmed.  *United States v. Owens*, 917 F.3d 26 (1st Cir. 2019).

Petitioner argues (1) his attorneys provided ineffective assistance when they failed to secure the suppression of evidence following an alleged illegal search, (2) his attorneys provided ineffective assistance when they failed to challenge what he sees as insufficient specificity as to an underlying crime of violence, and (3) interstate domestic violence does not categorically qualify as a crime of violence.  (Motion at 6–8.)  The Government requests dismissal.  (Response, ECF No. 193.)

Following a review of the record and after consideration of Petitioner's motion and the Government's request for dismissal, I recommend the Court grant the Government's request and dismiss Petitioner's motion.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Late one night in December 2014, an armed intruder broke into a house in Saco, Maine. The intruder shot at the homeowners' overnight guest (Petitioner's wife), hitting her in the head, arm, and torso. The intruder also shot through a door at one of the owners, hitting him in the arm, neck, and rib area.

In the early morning hours, Maine police officers notified New Hampshire police of the shooting; New Hampshire police officers went to Petitioner's Londonderry, New Hampshire residence. One officer made his way up the driveway, placed a hand on the hood of Petitioner's vehicle, confirmed that it was warm, and retreated to the other officers. Shortly thereafter, the officers followed Petitioner's vehicle to a nearby gas station, where they approached Petitioner.

Petitioner agreed to be interviewed at the police station. The police officers noted that Petitioner had blood on his hand and they collected DNA samples from Petitioner. They also noticed blood and other evidence in the vehicle potentially linking it to the crime scene. The officers reviewed surveillance video from a gas station and a coffee shop, which video showed Petitioner wearing dark clothes on the night of the shooting. Law enforcement obtained warrants to search Petitioner's residence, vehicle, and electronic devices.

In March 2015, Petitioner was indicted on one count of interstate domestic violence in violation of 18 U.S.C. § 2261(a)(1) and (b)(2) and one count of discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii). (Indictment, ECF No. 22.)  Petitioner moved to dismiss the indictment on double jeopardy grounds, to suppress the evidence from the search of his vehicle's hood, and to suppress the evidence from the search warrants, which he argued were illegally obtained.  (Motions, ECF Nos. 40, 41, 43.)  The Court held an evidentiary hearing and denied Petitioner's motions.  (Suppression Hearing, ECF No. 57; Order, ECF No. 64.)  After a trial in February 2016, a jury found Petitioner guilty on both counts.  (Verdict, ECF No. 110.)  In July 2016, the Court sentenced Petitioner to 240 months in prison on Count One (interstate domestic violence) and life in prison on Count Two (discharge of a firearm in relation to a crime of violence).  (Judgment, ECF No. 131.)

On appeal, Petitioner challenged the sufficiency of the evidence and the Court's denial of his pretrial motions. *Owens*, 917 F.3d at 30.  The First Circuit upheld the conviction and sentence. *Id.*

**DISCUSSION**

**A.    Legal Standards**

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence

"is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

"*[P]ro se* habeas petitions normally should be construed liberally in petitioner's favor." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief.  *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978).  When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal.  *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence."  *Berthoff*, 308 F.3d at 127–28. Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010).  The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte.*"  *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (recognizing that "procedural default rules

developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default if the petitioner demonstrates that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The petitioner must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the *Strickland* test because a failure to meet either prong will undermine the claim. *Id.* at 697. If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

Under the law of the case doctrine, "issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (internal modifications and quotation marks omitted); *see also Elwell v. United States*, 95 F.3d 1146, 1996 WL 516138 at *5 (1st Cir. 1996) (holding that a petitioner "is not entitled on collateral review to relitigate issues raised on direct appeal, absent an intervening change in the law"); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) (collecting cases and explaining limited exceptions).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)).

Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).  A court can reasonably require a petitioner to supply the court with salient details of the claim prior to permitting discovery or a hearing.  *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

## B.   Search of the Car Hood

Petitioner argues his trial and appellate attorneys provided ineffective assistance because they failed to argue persuasively and successfully that an illegal search occurred when a police officer walked up the driveway and touched the hood of Petitioner's vehicle to determine whether it was still warm.  Petitioner essentially reasserts the argument he presented to the Court at the suppression hearing, faulting counsel for focusing on whether the driveway was within the curtilage rather than the fact that the driveway was on private property.

Petitioner's argument fails, however, because he misinterprets *United States v. Jones*, 565 U.S. 400 (2012)—which held that attaching a GPS device to a suspect's vehicle constitutes a search under the Fourth Amendment—as standing for the proposition that all intrusions onto private property require a warrant.  While the Court in *Jones* reaffirmed the relevance of private property boundaries and trespass law to Fourth Amendment inquiries, *id.* at 409 ("the *Katz* reasonable-expectation-of-privacy test has been *added to*, not *substituted for*, the common-law trespassory test"), the Court explicitly rejected the assertion that any physical intrusion onto private property constitutes a Fourth Amendment search, regardless of whether that area was within the curtilage of the home or not.  *Id.* at 411 (intrusion into private land that is beyond the curtilage of the home, such as an open field, "did not constitute a Fourth Amendment search even though it was a trespass at common law" because private property outside the curtilage of a home "is not one of those protected areas enumerated in the Fourth Amendment").  Petitioner, therefore, has not shown that the Court incorrectly analyzed the Fourth Amendment issue by focusing on the curtilage of the home, or that counsel should have made other arguments based on the bounds of Plaintiff's property, rather than the curtilage.

Even if Petitioner had a basis to challenge the legality of the officer's entry onto the property to touch the hood of the vehicle, he is barred from asserting the argument on postconviction review because the First Circuit directly considered and upheld the legality of the officer's conduct, and Petitioner has not identified any mistake or intervening change in the law that would alter the First Circuit's analysis on the issue.  *See Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994); *Elwell v. United States*, 95 F.3d 1146, 1996 WL

516138 at *5 (1st Cir. 1996). Moreover, the First Circuit reasoned that "even assuming that the driveway formed part of the house's curtilage" and was therefore generally protected against warrantless intrusions, "[the officer] faced exigent circumstances when he entered the driveway and placed his hand on [Petitioner's] vehicle," which meant that his "warrantless search [was] within the bounds of the Fourth Amendment." *Owens*, 917 F.3d at 35. Given the First Circuit's finding of exigent circumstances, Petitioner cannot prevail on his challenge to the Court's analysis because if the officer's entry onto the property constituted a search for Fourth Amendment purposes, the search was lawful.

Because Petitioner is barred from collaterally challenging the legality of the officer's entry onto the property to touch the vehicle hood, and because Petitioner's underlying arguments regarding the entry and touch of the hood lack merit, Petitioner cannot establish that counsel performed deficiently or that he was prejudiced[1] by counsels' decisions.

---

[1] Petitioner also cannot show prejudice because even if he did have a meritorious Fourth Amendment argument regarding the suppression of the evidence that flowed from the search of the hood, there is no reasonable likelihood of a different result. The evidence of the hood's warmth played a very limited role at trial, because Petitioner's own account acknowledged that he had driven the car in the early morning hours. With all the other evidence, there is no likelihood of a different result if that evidence alone were omitted. Petitioner also has not shown that the evidence the officers subsequently collected would have been excluded as "fruit of the poisonous tree" if the hood search was deemed unlawful, because there is no reason to suggest that the officers would not have followed Petitioner and collected the subsequent evidence even if the officers did not know the hood was warm. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (to determine whether evidence is excluded as fruit of the poisonous tree, the "apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint") (quotation omitted). In other words, because there was an insufficient causal connection between the hood touch and the rest of the evidence against Petitioner, the subsequent evidence was not the "fruit" of the hood touch and would not have been excluded even if Petitioner could establish a Fourth Amendment violation regarding the hood touch.

## C.      Sufficiency of the Indictment

Petitioner claims his attorneys provided ineffective assistance by failing to challenge the Court's subject matter jurisdiction or to move for the dismissal of the indictment because the Government allegedly failed to list a specific underlying crime of violence. Petitioner's argument fails because the indictment specifically alleged underlying crimes of violence, namely "attempted murder and aggravated assault, against [Petitioner's wife], causing life threatening bodily injury to her." (Indictment at 1.) The Court instructed the jury that it must find "beyond a reasonable doubt that Petitioner committed either the crime of attempted murder and/or the crime of aggravated assault against [Petitioner's wife] in the course of or as a result of interstate travel." (Trial Transcript at 2039, ECF No. 178). The Court also instructed the jury on the elements of the two underlying crimes. (*Id.* at 2039–41.)[2]

Because Petitioner's challenges to the indictment and the Court's jurisdiction lack merit, Petitioner has not established that counsel performed deficiently by failing to make the arguments or that Petitioner was prejudiced as a result of counsel's decisions.

## D.      Categorical Crime of Violence

Petitioner contends that his life sentence on Count Two pursuant to 18 U.S.C. § 924(c)(1)(A)(iii) was unlawful because his underlying crime, 18 U.S.C. § 2261(a)(1), does

---

[2] To the extent that Petitioner argues that the Government was required to pick a *single* underlying crime that might satisfy the "crime of violence" element, his argument is unpersuasive because a jury need not be unanimous on alternate means or methods of satisfying elements, as long as the jury agrees that the element is satisfied.  See *infra* Part D.

not qualify as a "crime of violence" as defined in § 924(c).  Section 924(c)(1)(A)(iii) provides in relevant part:

> any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

Because the additional consecutive penalty is framed as a mandatory minimum with no maximum, "the maximum penalty under 18 U.S.C. § 924(c)(1)(A)(iii) . . . is life imprisonment."  *United States v. Ortiz-Garcia*, 665 F.3d 279, 282 (1st Cir. 2011).

Section 924(c) defines the term "crime of violence" using two clauses, the "elements" clause (also called the "force" clause) and the "residual" clause.  *See United States v. Cruz-Rivera*, 904 F.3d 63, 65 (1st Cir. 2018).  The elements clause includes any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).  The residual clause includes any felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* § 924 (c)(3)(B).  The words "physical force" in this context means "*violent* force—that is, force capable of causing physical pain or injury to another person."  *Johnson v. United States*, 559 U.S. 133, 140 (2010) (*Johnson I*) (emphasis in original).

In a series of cases beginning in 2015, the Supreme Court struck down as unconstitutionally vague several similar statutory provisions to the residual clause of § 924(c)(3)(B), *see Johnson v. United States*, 576 U.S. 591 (2015) (*Johnson II*), and the Supreme Court struck down that specific residual clause provision in 2019.  *United States*

*v. Davis*, 139 S. Ct. 2319 (2019).  The question here, therefore, is whether Petitioner's predicate offense under § 2261(a)(1) and (b)(2) satisfies the elements clause definition of "crime of violence" in § 924(c)(3)(A).

When analyzing whether a predicate offense fits within a penalty-enhancing term like "crime of violence," courts use a categorical or modified categorical approach.  *United States v. Mohamed*, 920 F.3d 94, 101 (1st Cir. 2019) (citing *Mathis v. United States*, 136 S.Ct. 2243, 2249 (2016); *Taylor v. United States*, 495 U.S. 575, 588 (1990)).  "In short, [courts] look to the statutory definition of the offense in question, as opposed to the particular facts underlying the conviction."  *United States v. Davila-Felix*, 667 F.3d 47, 56 (1st Cir. 2011) (internal quotations omitted).  A statute of conviction can only serve as a predicate offense "if the statute's elements are the same as, or narrower than" the federal elements of the enhancement.  *See Descamps v. United States*, 570 U.S. 254, 257 (2013).

When a statute "sets out a single (or 'indivisible') set of elements", the straightforward categorical approach applies, but when a statute has "a more complicated (sometimes called 'divisible') structure . . . list[ing] elements in the alternative, and thereby defin[ing] multiple crimes" courts use the modified categorical approach.  *Mathis*, 136 S. Ct. at 2248–49.  Under the modified categorical approach, "a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of."  *Id.* at 2249 (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)).  The modified categorical approach, however, "gives a sentencing court no special warrant to explore the facts of an offense, rather than to determine the crime's elements and compare

them with the generic definition." *Id.* at 2251.  In *Mathis*, the Supreme Court instructed courts to distinguish between a statute "that lists multiple elements disjunctively"—thereby creating a divisible statute defining separate crimes and permitting resort to the modified approach—and a statute that merely "enumerates various factual means of committing a single element"—thereby creating an indivisible statute defining a single crime analyzed under the unmodified categorical approach. *Id.* at 2249–50.  Elements must be specifically charged and admitted by a defendant or found by a jury beyond a reasonable doubt, but "a jury need not find (or a defendant admit) any particular" method or means.  *Id*. at 2249–50, 2256.

Pursuant to § 2261(a)(1) anyone who (1) "travels in interstate or foreign commerce or enters or leaves Indian country or is present within the special maritime and territorial jurisdiction of the United States," (2) with the intent to kill, injure, harass, or intimidate," (3) "a spouse, intimate partner, or dating partner," and who, (4) "in the course of or as a result of such travel or presence, commits or attempts to commit a crime of violence against that spouse, intimate partner, or dating partner" commits a crime.  The base penalty for that crime is "not more than 5 years" imprisonment, § 2261(b)(5), but the penalty is increased to a maximum of 10 years if serious bodily injury to the victim results or if the offender uses a dangerous weapon, § 2261(b)(3); to a maximum of 20 years if permanent disfigurement or life threatening bodily injury to the victim results, § 2261(b)(2); and to a maximum of life if death results, § 2261(b)(1).

Petitioner argues that § 2261 is indivisible.  While several portions of the text of § 2261(a) contemplate alternatives, in terms of distinguishing between elements and means,

*see Mathis*, 136 S. Ct. at 2249–51, 2256, the alternatives could be construed as means or methods, rather than alternate elements.  Accordingly, when assessing § 2261(a), without consideration of the enhanced penalty provisions in § 2261(b), the Court is arguably not permitted to look to the *Shepherd* documents to determine which mental states or underlying crimes the Government charged.  *See United States v. Jacobs*, No. 7:98-CR-02-JMH-HAI, 2020 WL 3421765, at *6–7 (E.D. Ky. June 22, 2020) ("Neither section of § 2261(a) defines multiple crimes" so "the Court must use the categorical approach, not the modified categorical approach, to analyze the statute and determine if it is a predicate crime of violence for purposes of § 924(c)'s elements clause").

Focusing on the second element, Petitioner argues that § 2261(a) is not categorically a crime of violence because it can be committed by harassment or intimidation alone. Harassment or intimidation does not necessarily require "force capable of causing physical pain or injury to another person," *see Johnson I*, 559 U.S. at 140, but Petitioner's argument ignores the fourth element of § 2261(a), which requires an attempted or committed "crime of violence against that spouse, intimate partner, or dating partner."  Because the fourth element of § 2261(a) itself requires a further predicate crime of violence[3] "[t]he only conclusion that can be reached is that a § 2261 conviction must also have, as an element, a crime of violence that contains, as an element, the use, attempted use, or threatened use of

---

[3] The identical phrase "crime of violence" within § 2261(a) is defined with an identical elements and residual clause at 18 U.S.C. § 16.  The Supreme Court also struck down that residual clause in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018).

physical force: the exact definition also required under § 924(c)(3)(A)." *Jacobs*, 2020 WL 3421765 at *10.

Even if the "crime of violence" incorporated within the fourth element of § 2261(a) could be distinguished from the "crime of violence" in §924(c)(3)(A),[4] Petitioner's challenge would still fail because he was also specifically charged with causing life-threatening bodily injury, triggering the twenty-year penalty provision at § 2261(b)(2).  In a similar context, the First Circuit determined that a base crime with separate penalty provisions—including an enhanced penalty provision when the crime resulted in bodily injury—created an overall statute that was "plainly divisible."  *United States v. Taylor*, 848 F.3d 476, 492 (1st Cir. 2017).  The statute here is divisible, therefore, as to the versions created by the enhanced penalty provisions in § 2261(b).  Based on Petitioner's indictment and other *Shepherd* documents, a fifth element of "resulting in life-threatening bodily injury" is added to the four elements previously discussed.  Because "the bodily injury requirement at a minimum connotes the use of physical force," *Jacobs*, 2020 WL 3421765 at *11, Petitioner's actual offense defined by the combination of § 2261(a) and (b)(2) was a crime of violence for purposes of § 924(c).

---

[4] One possible distinction is that § 2261(a) can be satisfied with an attempted crime of violence.  In the similar context of the term "violent felony," courts have found it difficult to determine whether an attempted violent felony necessarily constitutes a violent felony because it depends on how strictly courts have applied the underlying attempt statute.  *See e.g.*, *Morris v. United States*, 827 F.3d 696, 697 (7th Cir. 2016).  However, because the term "crime of violence" includes the "attempted use" of force, those courts that have addressed the specific question here have determined that "when a substantive offense is a crime of violence under 18 U.S.C. § 924(c)(3)(A), an attempt to commit that offense is also a crime of violence." *United States v. Dominguez*, 954 F.3d 1251, 1255 (9th Cir. 2020).

Because Petitioner's arguments concerning crimes of violence fail regardless of whether the categorical approach or the modified categorical approach applies, Petitioner is not entitled to postconviction relief, his attorneys did not provide ineffective assistance of counsel by failing to present the argument at trial or on appeal, and Petitioner was not prejudiced as a result of those decisions.[5]

## CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases.  In addition, I recommend that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255 and grant the Government's request to dismiss the motion.  I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen

---

[5] The Government also argues that Petitioner is procedurally barred from presenting the argument because he did not present it on direct appeal.  *See Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner also casts his argument as one of ineffective assistance of counsel in order to provide cause for any procedural default. While the Government acknowledges that *Davis* would offer retroactive relief if Petitioner had been convicted under the residual clause, the Government asserts that he was actually convicted under the elements clause, that his argument is really a *Mathis* claim, not a *Davis* claim, and that Petitioner could have presented his *Mathis* argument on direct appeal. Because Petitioner's argument regarding the inapplicability of the elements clause is only relevant once the residual clause is disregarded, it is not entirely clear how his claim should be characterized under *Mathis* and *Davis*.  Because of that uncertainty, and because the underlying argument lacks merit in any event, the Court need not address those issues.

(14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 24th day of September, 2020.